EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT SUPERINDIANPOWER@GMAIL.COM and HELL_SHILL@YAHOO.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC** | **FILED UNDER SEAL**<br><br>**Case No.** 26-MJ-44-DES |

## APPLICATION FOR SEARCH WARRANT

I, Jessica Jennings, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **NORTHERN** District of **CALIFORNIA** *(identify the person or describe property to be searched and give its location)*:

**SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Section(s) 2252(a)(2) and (b)(1), 2252(a)(4)(B) and (b)(2) and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Jessica Jennings Special Agent
Homeland Security Investigations

Sworn to on:

Date: March 3, 2026

City and state: Muskogee, Oklahoma

*Judge's signature*

D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Jessica Jennings, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with **NAME: STEVEN HILL, PHONE: 19186896942, EMAIL: SUPERINDIANPOWER@GMAIL.COM and HELL_SHILL@YAHOO.COM** that is stored at premises owned, maintained, controlled, or operated by Google, LLC, (Google) an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I have been employed as a Special Agent ("SA") with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since July 2022 and am currently assigned to the Office of the Resident Agent in Charge in Tulsa, Oklahoma, and am currently assigned to investigate crimes involving child exploitation. While employed by HSI, I have

investigated federal criminal violations related to child exploitation and child pornography. I have gained experience through training at the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator Training Program (CITP) and the Homeland Security Investigations Special Agent Training (HSISAT) program, and everyday work relating to conducting these types of investigations. Prior to working for Homeland Security Investigations, I worked for Tulsa Police Department from 2015 – 2022. From approximately 2019 – 2022, I worked as a Cyber Crimes Detective for Tulsa Police Department investigating Internet Crimes Against Children.

4. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

5. Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe the identified Google account contains evidence, instrumentalities, contraband, and/or fruits of violations of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography), exists and will be located in the electronically stored information described in Attachment B and is recorded on the device described in Attachment A.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

7. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Meta from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

**Characteristics Common to Individuals Who Exhibit a Sexual Interest in Children**

8. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who exhibit a sexual interest in children:

a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity;

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts;

c. Such individuals typically possess and maintain digital or electronic files of child pornographic material, that is, their pictures, videos, photographs, correspondence, mailing lists, etc., in a secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, videos, photographs, correspondence, and mailing lists for many years;

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis;

e. Based on my training and experience and speaking with other special agents, I know that such individuals have taken their electronic devices and storage media, which contain their collections of child pornography, with them when they have moved or changed residences;

f. Such individuals may also take it upon themselves to create their own child pornography or child erotica images, videos or other recordings. These images, videos or other recordings may be taken or recorded covertly, such as with a hidden camera in a bathroom, or the individual may have child victims he or she is abusing in order to produce child pornographic or child erotica images, videos or other recordings. These images, videos or other recordings are often collected, traded, or shared;

g. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools.

Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted"[1] it;

h. Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography;

i. Such individuals may use social media applications or other means of electronic communications to locate, converse with, and groom minor victims in an attempt to solicit child pornography and/or physically meet and sexually abuse a minor victim;

j. Such individuals who use social media applications or other means of electronic communications to locate, converse with, and groom minor victims often do not just have one victim. It has been my experience in these types of investigations that such individuals will communicate with multiple victims in an attempt to be more successful in obtaining child pornography and/or physically meeting and abusing a victim;

k. Based on my training and experience, I know that such individuals may use their financial information to buy and sell child pornography online and purchase software used to mask their online activity from law enforcement. For instance, individuals may purchase cryptocurrency such as Bitcoin to buy and sell child pornography online. The use of cryptocurrency provides a level of anonymity because it masks the user's identity when conducting online financial

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370–71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010).)

transactions and provides a means of laundering illicit proceeds. Financial information may provide a window into the identities of individuals seeking to buy or sell child pornography online by tying the illicit transactions back to the user. Financial information contained on an electronic device containing child pornography may also provide indicia of ownership. Further, based on my training and experience, I know that individuals involved in the trafficking of child pornography may use sophisticated software, such as router configuration software, virtual private networks, proxy servers, cryptocurrency exchanges, or other anonymizing software, in conjunction with these illicit financial transactions to provide dual layers of anonymity and prevent law enforcement detection. Financial information may indicate which services were purchased to obscure an individual's identity;

9. Such individuals prefer not to be without their child pornography for any prolonged period of time. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

**Background of NCMEC and the CyberTipline Program**

10. The National Center for Missing & Exploited Children ("NCMEC") was incorporated in 1984 by child advocates as a private, non-profit 501(c)(3) organization to serve as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited child issues. To further the mission to help find missing children, reduce child sexual exploitation, and prevent future victimization, NCMEC operates the CyberTipline and Child Victim Identification Program. NCMEC makes information submitted to the CyberTipline and Child Victim Identification Program available to law enforcement and also uses this information to help identify trends and create child safety and prevention messages. As a clearinghouse, NCMEC also works with Electronic Service Providers ("ESPs"), law enforcement and the public in a combined effort to reduce online child sexual abuse

images. NCMEC performs its programs of work pursuant to its own private mission and independent business operations. NCMEC does not act in the capacity of or under the direction or control of the government or law enforcement agencies. NCMEC does not investigate and cannot verify the accuracy of the information submitted by reporting parties.

11. NCMEC's CyberTipline is the nation's centralized reporting system for the online exploitation of children. The public and ESPs can make reports of suspected online enticement of children for sexual acts, child sexual molestation, child sex abuse material, child sex tourism, child sex trafficking, unsolicited obscene materials sent to a child, misleading domain names, and misleading words or digital images on the internet. CyberTipline Reports ("CyberTips") are distributed by NCMEC analysts to law enforcement agencies who may have legal jurisdiction in the place that victims and suspects are believed to be located based on information provided in the CyberTips.

**Probable Cause**

12. On December 17, 2025, I received a request for assistance from the Oklahoma State Bureau of Investigation regarding CyberTipline Report 222637105 from the National Center for Missing and Exploited Children.

13. CyberTip 222637105 was received by NCMEC on October 29, 2025, at 00:05:29 UTC. The CyberTip was filed by Google regarding account with the identifiers **NAME: STEVEN HILL, PHONE: 19186896942, EMAIL: SUPERINDIANPOWER@GMAIL.COM and HELL_SHILL@YAHOO.COM** who had uploaded multiple files of "apparent child pornography" on their platform on multiple dates spanning from approximately 2020 to 2025. In this CyberTipline Report, NCMEC provided 725 total files. This CyberTipline Report received an "[e]scalation" that stated, "this report appears to contain images/videos that appear unfamiliar and may depict newly produced and/or homemade content." The CyberTipline report provided that the

phone number +19186896942 and the email address superindianpower@gmail.com were both verified.

14. Google provided additional information that they became aware of the reported content which was stored in Google Photos Infrastructure and Google Drive Infrastructure.

15. Upload dates and times include dates spanning from approximately 02-06-2020 22:00:02 UTC to 10-26-2025 03:15:47 UTC

16. One of the files provided along with the CyberTipline report had an original filename of "9.mp4" and Google Report Filename of "Google-CT-RPT-222637105-8b6c678c0679e33a54ae7a92a7198703-9.mp4" which was uploaded on 03-07-2020 15:16:31 UTC. This video has an MD5 hash value of b0d04365c6b0178afd7b54ec4f0ac91f. This file was viewed by the ESP. The file appears to be a video that is approximately 4 seconds in length. The video contains a nude juvenile male subject with his penis exposed laying down. The child has an adult male penis touching his mouth and there appears to be another penis being inserted into his anus.

17. On December 18, 2025, HSI Tulsa served a subpoena for Google LLC for subscriber information for the information provided above. HSI Tulsa received results back that the account was created on 2010-04-12 17:54:37 Z. The reported name was Steven Hill.

18. On December 18, 2025, HSI Tulsa served a subpoena to AT&T Corporation for subscriber information related to phone number 918-689-6942 for the date and time 08-22-2025 13:24:00 UTC. AT&T returned user information of Steven Hill with a user address of 121693 CHIPMUNK LN, EUFAULA, OK 74432 and a billing address of 130 LVMHE DR, EUFAULA, OK 74432 and an email address of SUPERINDIANPOWER@GMAIL.COM.

19. Steven Hill with a date of birth of 08/04/1990 is a confirmed member of the Muscogee Creek Nation (Roll Number 65098) with some degree of Indian blood. On December 17, 2025,

Homeland Security Investigations (HSI) Tulsa office reached out to Muscogee Creek Lighthorse. An Investigator for Muscogee Creek Lighthorse confirmed that Steven HILL resides at 130 Lvmhe Drive, Eufaula, OK 74432. He has lived there since October 18, 2023. The most recent annual update was completed in November, 2025. Muscogee Creek Nation reported a phone number of 918-689-6942 for HILL.

## BACKGROUND CONCERNING GOOGLE[2]

20. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

21. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

---

[2] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

22. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

23. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

24. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

25. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

26. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

27. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

28. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

29. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored

communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

30. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

31. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

32. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

33. Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

34. Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device calendar, so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them. Calendar can be accessed from the same browser window as other Google products like Gmail and Calendar.

35. Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

36. Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications

like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely unless the user deletes them. Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely unless the user deletes them. Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribes to Google's cloud storage service, Google One, they can opt to back up all the data from their device to Google Drive.

37. Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

38. Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

39. Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to

automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

40. A subsidiary of Google, Google Payment Corporation, provides Google Accounts an online payment service called Google Pay (previously Google Wallet), which stores credit cards, bank accounts, and gift cards for users and allows them to send or receive payments for both online and brick-and-mortar purchases, including any purchases of Google services. Users may delete some data associated with Google Pay transactions from their profile, but Google Payment Corporation retains some records for regulatory purposes.

41. Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called "My Activity."

42. My Activity also collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account, including voice queries made to the Google artificial intelligence-powered virtual assistant Google Assistant or commands made to Google Home products. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, ads clicked, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google Assistant and Google Home voice queries and

commands may also be associated with the account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts into automatic deletion of their location history every three or eighteen months. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

43. Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

44. Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

45. Therefore, Google's servers are likely to contain stored electronic communications and photographs involved with drug trafficking, human smuggling and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users and location-based data.

**Information to be Searched and Things to be Seized**

46. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Google. Because the warrant will be served on Google, who will then compile the

requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

47. Affiant anticipates executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

48. In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, Affiant knows that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with e-mails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

**CONCLUSION**

49. Based on the information above, I submit that there is probable cause to believe that there is evidence of violations of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography), have been violated, and that evidence of these offenses, more fully described in Attachment B, are associated with the Google account described in Attachment A.

50. I request to be allowed to share this affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully Submitted,

Jessica Jennings, Special Agent
Homeland Security Investigations

Sworn to on March 3, 2026.

UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with **NAME: STEVEN HILL, PHONE: 19186896942, EMAIL: SUPERINDIANPOWER@GMAIL.COM and HELL_SHILL@YAHOO.COM** ("the Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be disclosed by LLC Google")

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request. Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from April 12, 2010 to October 27, 2025 unless otherwise indicated:

a. All business records and subscriber information, in any form kept, pertaining to the Account, including:

b. Names (including subscriber names, user names, and screen names);

c. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

d. Telephone numbers, including SMS recovery and alternate sign-in numbers;

e. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

f. Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

g. Length of service (including start date and creation IP) and types of service utilized;

h. Means and source of payment (including any credit card or bank account number); and

i. Change history.

j. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

k. Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

l. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails.

m. All forwarding or fetching accounts relating to the accounts;

n. Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

o. Any records pertaining to the user's calendar(s), including: Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

p. The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses

associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history;

q. The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, application, and other data uploaded, created stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

r. The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses;

s. All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

t. All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

u. All payment and transaction data associated with the account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history;

v. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history;

w. All Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings and all associated logs, including access logs, IP addresses, location data, timestamps, and change history;

x. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times

and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

y. The types of service utilized;

z. All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

aa. All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken.

Google is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II. Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Distribution of Child Pornography); and 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of and Access with Intent to View Child Pornography including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

b. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

c. The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

d. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

e. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

f. The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

g. The identity of the person(s) who communicated with the Account about matters relating to drug conspiracy, alien smuggling, domestic transporting, and structuring transactions to evade reporting requirements, including records that help reveal their whereabouts.